**FILED**

Jul 26 2016, 8:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

Lamont Perkins,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 26, 2016

Court of Appeals Case No.
49A02-1511-CR-1955

Appeal from the Marion Superior
Court.
The Honorable Shatrese Flowers,
Judge.
The Honorable David M. Seiter,
Commissioner.
Cause No. 49G20-1501-F5-483

**Sharpnack, Senior Judge**

# Statement of the Case

Lamont Perkins appeals from his conviction after a bench trial of possession of paraphernalia as a Level 6 felony.[1] We affirm.

# Issue

The sole issue presented in this appeal is whether there is sufficient evidence to convict Perkins of the offense, which we set forth in pertinent part, as enacted in the statute:

> A person who possesses a raw material, an instrument, a device, or other object that the person intends to use for . . . introducing into the person's body a controlled substance . . . commits . . . [possession of] paraphernalia.

# Facts and Procedural History

Perkins was housed in the Duvall Center, which is part of Marion County Community Corrections. Residents there are searched twice upon returning from authorized passes; once for items they bring in, and, after that, they are strip searched.

Perkins's belongings were searched upon his return from an authorized pass on January 2, 2015. After Perkins emptied his pockets and placed those contents and all of his additional items, including extra clothing, on the table, Officer

---

[1] Ind. Code § 35-48-4-8.3 (2014).

Ronnie Jones conducted the initial search of the items. He found two syringe needles in a Newport cigarette pack Perkins brought in with him. Officer Jones showed the syringe needles to Sergeant Frank Gunn, his supervisor, who was in the control room. The control room separates the entrance and exit passageways for residents and is enclosed in glass. Upon Jones's discovery, Perkins grabbed the clothing he had placed on the table, forced open the entrance door, exited, and fled down Ludlow Avenue. Once residents enter, they are prohibited from leaving again without an authorized pass.

[5] Officer Gunn pursued Perkins on foot and also signaled to Marion County Sheriff's Deputy L. Todd Eppert, who was nearby in his patrol car, alerting him that Perkins was running from the facility. Deputy Eppert was assigned to assist the officers at the Duvall Center. As Perkins ran, he tossed his additional clothing. Deputy Eppert was the first to catch up to Perkins, who initially did not stop when ordered to do so, but then gave up because he was out of breath and could not outrun the patrol car. Officer Gunn, who collected Perkins's clothes along the way, caught up to the two. The officers asked Perkins what he was doing. Perkins replied by saying, "it's not mine, it's not mine." Tr. p. 19.

[6] Perkins was returned to the Duvall Center where he was strip searched. A bundle of Newport cigarettes was found in his crotch area. When the officers returned to the control center with Perkins, they retrieved the items left in Officer Jones's custody. Upon a more detailed search of those items, a bottle cap containing residue was discovered in the cigarette pack. The officers field-

tested the substance contained in the bottle cap for heroin, and the test results were positive. It is against the rules to have syringe needles or cigarettes, let alone narcotics, in the Duvall Center.

[7] On January 5, 2015, the State charged Perkins with one count of Level 5 felony possession of a narcotic drug, one count of Level 5 felony escape, and one count of Level 6 felony possession of paraphernalia with a prior conviction. At the conclusion of Perkins's bench trial, he was found guilty as charged. The trial court sentenced Perkins to four years on each of the Level 5 felony convictions, and to one year on the Level 6 felony conviction, to be served concurrently. Perkins now appeals.

## Discussion and Decision

[8] Perkins challenges the sufficiency of the evidence supporting his conviction of possession of paraphernalia with a prior conviction.[2] Perkins claims that because the State was required to prove that he intended to use the syringe needles to introduce a controlled substance into his body, its failure to offer evidence of track marks on his arms or evidence of past drug use, renders the evidence insufficient. Further, he claims that even though heroin residue was found in the bottle cap inside the cigarette pack, the State failed to introduce evidence of heroin residue in or on the syringe needles. In addition, he

---

[2] The enhancement due to a prior conviction was established in a separate phase of the trial after the trial court had found Perkins guilty of possession of paraphernalia. Perkins does not challenge the enhancement.

highlights what he describes as a lack of evidence that the amount of heroin found in the bottle cap was sufficient for him to inject into his body. Further, he claims that the possession of the syringe needles, plus what he describes as an insufficient amount of heroin in the bottle cap, cannot sustain his conviction because there is insufficient evidence that there was a "controlled substance . . . otherwise nearby or available in the locked facility where Perkins was returning." Reply Br. p. 5.

[9] When appellate courts review the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Thang v. State*, 10 N.E.3d 1256, 1258 (Ind. 2014). We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from that evidence. *Id.* We will affirm the conviction if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* A conviction may be based upon an inference if reasonably drawn from the evidence. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

[10] We disagree with Perkins's argument that the statute requires the amount of the controlled substance be a usable amount. In *Cooper v. State*, 171 Ind. App. 350, 363, 357 N.E.2d 260, 267 (1976), we squarely addressed the issue, with respect to a possession of narcotics conviction, and concluded that because the statute "makes no mention of an amount of drug necessary to sustain a conviction" it is reasonable to conclude "that the legislature intended that any identifiable

amount be sufficient." Indeed, in *Sargent v. State*, 153 Ind. App. 430, 436-37, 287 N.E.2d 795, 798-99 (1972), a conviction was upheld where the defendant had needle marks on his arms, one of which was still bleeding, admitted to prior narcotics use, was hospitalized post-arrest for withdrawal symptoms, and was in possession of a needle, eyedropper, and cooker, later analyzed as showing *traces* of heroin.

[11] Here, there was evidence that the residue inside the bottle cap field-tested positive for heroin, and thus, the residue was identifiable. The amount or usability of the heroin is of no consequence for purposes of the conviction because it is not an element of the offense as defined by our legislature. Evidence of possession of even a trace or residue of a controlled substance is relevant to the issue of the intended use of the paraphernalia, not that the trace or residue of the controlled substance found was going to be used. Like track marks, admission of prior drug use or convictions for drug use, possession of the trace or residue of a controlled substance is indicative of the intended use of the paraphernalia.

[12] As we held in *Bradley v. State*, 153 Ind. App. 421, 429, 287 N.E.2d 759, 763 (1972), even if there is evidence of flight, attempted concealment, and possession of narcotics-adapted equipment, the conviction cannot be sustained absent evidence of intent. Intent to introduce a controlled substance into one's body may be inferred from circumstantial evidence. *Sluder v. State*, 997 N.E.2d 1178, 1181 (Ind. Ct. App. 2013). Examples of evidence used to establish intent, albeit not an exclusive list, are possession of an identifiable amount of narcotics,

an instrument, a device, or other object that the person intends to use for introduction of a controlled substance in the person's body, and/or evidence of or admission to prior drug use.

[13]  In *Bradley*, there was no admission or evidence of prior drug use or possession of narcotics. *Dabner v. State*, 258 Ind. 179, 279 N.E.2d 797, 798-99 (1972), involved a review of the sufficiency of the evidence under a prior version[3] of the statute, where the evidence of the defendant's possession of an eye-dropper, a needle, and a cooker, along with evidence of puncture marks over the veins of the defendant's forearm, was sufficient to sustain the conviction.

[14]  In *Stevens v. State*, 257 Ind. 386, 388-89, 275 N.E.2d 12, 13 (1971), evidence of a defendant's possession of a needle, syringe, and cooker, along with the defendant's admission of past narcotics use, and expert testimony about the presence of puncture marks consistent with narcotics use, was sufficient to support the defendant's conviction under a prior version of the statute.[4]

[15]  Likewise, in *Von Hauger v. State*, 255 Ind. 666, 668, 266 N.E.2d 197, 198 (1971), possession of a syringe, plunger, and needle, along with attempted concealment

---

[3] Dabner was charged with committing an offense on October 1, 1968. The version of the statute in effect at that time provided as follows: "(c) It shall be unlawful for any person to possess or have under his control, with intent to violate any provision of this act [§ § 10-3519, 3543] any hypodermic syringe or needle or any instrument adapted for the use of narcotic drugs by injection in a human being." (Acts 1961, ch. 90, § 2, p. 169, § 10-3520, Burns' 1966 Cum. Supp.) (quoted from *Moore v. State*, 248 Ind. 109, 111-12, 223 N.E.2d 899, 901-02 (1967)).

[4] The statute involved in *Stevens* is the same as set forth in the previous footnote. *Stevens* included the additional statutory citation I.C. 1971, 35-24-1-2(c).

and flight, coupled with evidence of previous convictions involving the use of narcotic drugs and an admission by the defendant that he was a narcotics user, was found sufficient to support a conviction under a prior version of the statute.[5]

[16] However, in *Sluder*, evidence of a syringe consisting of a hollow tube with a plunger and no needle, was insufficient to sustain the conviction without evidence of intent. 997 N.E.2d at 1182. We looked for evidence in the record of track marks on the defendant's arms, past drug use, previous drug convictions, or the presence of drugs that could circumstantially establish intent. *Id.* at 1181. In the absence of that evidence the conviction was reversed.

[17] Other cases decided by this Court have also found intent from circumstantial evidence. For example in *Trigg v. State*, 725 N.E.2d 446, 450 (Ind. Ct. App. 2000), a residue-encrusted crack pipe was found where the defendant had been seated in a vehicle. The defendant had nervously fidgeted in his seat while acting as though he was trying to hide or retrieve something as the officer approached the vehicle and asked the defendant to exit. This evidence was sufficient to support the inference that Trigg possessed the pipe with the intent to use it to smoke crack.

---

[5] The statute quoted in *Von Hauger* contains the same language as cited above, but with the additional statutory citation Acts 1935, ch. 280, s 2., p. 1351; 1961, ch. 90, s 2, p. 169. *Von Hauger,* 266 N.E.2d at 198.

[18]  In *McConnell v. State*, 540 N.E.2d 100, 101 (Ind. Ct. App. 1989), a defendant was arrested and taken into custody. After the defendant emptied his pockets, police recovered a small, green and silver smoking pipe, which had a screen in the bowl, and contained a small amount of residue. We held that a police officer's testimony that the residue in the pipe *appeared to be marijuana* was sufficient evidence from which the jury could infer that the substance was marijuana and that the defendant intended to use the pipe in connection with marijuana. *Id.* at 104 (emphasis added). The dissent would have found the evidence was sufficient if the State had offered more substantial testimony that the residue *was in fact marijuana*.[6]

[19]  This case differs from *McConnell* in that the controlled substance (heroin) is not in or on the syringe needles. However, it was found in the bottle cap secreted in the same container as the syringe needles. That is sufficient to support the inference that the syringe needles were intended to be used to inject a controlled substance into the defendant's body.

[20]  Although the evidence of Perkins's prior drug convictions was not introduced until the enhancement phase, the evidence of intent was sufficient because he was found to have possessed narcotics and instruments with which to introduce a controlled substance into his body. Furthermore, he fled from the Duvall

---

[6] The version of the statute cited in *McConnell* contained an enhancement for "possession of a raw material, instrument, device, or other object that he intends to use . . . in connection with marijuana, hash oil, or hashish." Ind. Code § 35-48-4-8.3 (1988) (As added by Acts 1980, P.L. 115, SEC. 2).

Center and his first response to the officers was that "it's not mine." Tr. p. 19. Such a response and flight are some evidence of his consciousness of guilt. Case law has established that the element of intent may be proved by evidence of possession of narcotics and/or evidence of prior narcotics use or convictions. Evidence of prior use by way of needle track marks, instances of prior use, prior convictions for use, or admissions of prior use is relevant to prove intent, but not required to prove intent where there is other evidence, as here, to prove intent.

[21] We are likewise unpersuaded by Perkins's argument about the cleanliness of the syringe needles. In *Cooper*, the police officer, who was working as a security guard and parking attendant, arrested Cooper after seeing him enter a car the officer had previously parked for a patron of the restaurant. After Cooper was arrested, the officer walked to the car Cooper had parked and observed a small package with a needle sticking out of it lying on the driver's seat where Cooper had previously sat. The package contained a bottle cap with burn marks on the bottom later found to contain heroin, a syringe with a needle attached, and three needle covers. There was no evidence that the syringes contained heroin, only that the bottle cap contained heroin. Each of the items was contained in the package. This evidence was sufficient to support the conviction.

[22] Although the issue of specific intent in *Cooper* was sustained by the presence of needle marks on the defendant's arm and an admission of narcotics use and convictions for narcotics use, it is factually similar to this case. The narcotics and the syringes/syringe needles were located together and there was no

evidence that the syringes contained heroin. Such evidence need not be presented, however, because the statute requires only an intent to use the syringe needles to introduce narcotics into the person's body, not actual use of the narcotics and injection equipment.

[23] Finally, Perkins argues that there was not enough heroin to use in the cap and no likelihood that heroin would be available in the Duvall Center. However, the statute does not require that the intended use be immediate or within any set time frame.

# Conclusion

[24] In light of the foregoing, we affirm Perkins's conviction of possession of paraphernalia.

[25] Affirmed.


Crone, J., and Pyle, J., concur.