## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 30 2017, 9:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew R. Elliott
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Melvin D. Levy,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 30, 2017

Court of Appeals Case No.
20A03-1608-CR-2009

Appeal from the Elkhart Superior Court

The Honorable Stephen R. Bowers, Judge

Trial Court Cause No.
20D02-1511-F4-57

**Pyle, Judge.**

# Statement of the Case

[1] Melvin D. Levy ("Levy") appeals his conviction and sentence for Level 4 felony possession of cocaine.[1] Levy was convicted pursuant to a jury trial in which police officers introduced evidence of cocaine they had found during a search of Levy's bedroom. On appeal, Levy argues that: (1) there was not sufficient evidence to prove that he constructively possessed the cocaine; and (2) his sentence was inappropriate under Appellate Rule 7(B) in light of the nature of his offense and his character. Because the State produced evidence that Levy had the intent and capability to exercise dominion and control over the cocaine, we conclude that there was sufficient evidence to prove he possessed the cocaine. We also conclude that his sentence was not inappropriate in light of the nature of his offense and his character.

[2] We affirm.

# Issues

1. Whether there was sufficient evidence to prove that Levy possessed cocaine.

2. Whether Levy's sentence was inappropriate in light of the nature of his offense and his character.

---

[1] IND. CODE §§ 35-48-4-6(a), (c)(2) and I.C. § 35-48-1-16.5(1). Levy was also convicted of Class A misdemeanor possession of a synthetic drug or a synthetic drug lookalike substance and Class B misdemeanor possession of marijuana, but he does not appeal either of those convictions.

## Facts

On November 19, 2016, two special units of the Elkhart City Police Department executed a "no-knock" search warrant at 916 South Main Street to search for evidence of drug activity.[2] (Tr. 50). The officers "ram[med]" the door in and then threw a "flash bang" on the stairs to distract the occupants of the house.[3] (Tr. 158). They then dispersed through the house and apprehended six occupants inside, including Levy. They found Levy under a pool table in the living room within an "arm's reach" of a revolver, which was hidden in the pool table. (Tr. 167).

After apprehending the occupants of the house, the officers searched for evidence of drugs and weapons. Meanwhile, Elkhart Corporal Greg Harder ("Corporal Harder") interviewed Levy, and Levy told Corporal Harder that his bedroom was in the southwest corner of the house on the second floor. After climbing the stairs to the second floor, that room would be the "second one on the left." (Tr. 67). While searching Levy's room, the officers found cocaine, synthetic marijuana, and marijuana. The bag of synthetic marijuana was located inside of a pair of "Michael Jordan" shoes, and the bag of cocaine was found inside of a gray winter hat. (Tr. 91). There was also a small bag of marijuana near the headboard of the bed.

---

[2] A "no-knock" search warrant allows police officers to enter a premise without first announcing their presence. (Tr. 50).

[3] A "flash bang" is a "device [used] to cause a distraction." (Tr. 160).

[5] In addition to drugs, Corporal Jason Gruber ("Corporal Gruber") found letters with Levy's name on them on a shelving unit in his bedroom. Two of the letters contained Levy's name and the address 916 South Main Street. Another letter had Levy's name on it and a different address. Due to their pre-search surveillance, the officers knew that Levy was also associated with the second address. Because there was "so much clutter" Corporal Gruber removed the letters from the shelving unit in Levy's room and placed them in the middle of the room where they would be easier to photograph. (Tr. 175).

[6] Subsequently, the State charged Levy with Level 5 felony possession of cocaine, Class A misdemeanor possession of a synthetic drug or synthetic drug lookalike substance, and Class B misdemeanor possession of marijuana. The State also charged Levy with enhancements to elevate his possession of cocaine charge to a Level 4 felony and his possession of marijuana charge to a Class A misdemeanor based on his prior conviction for dealing in cocaine.

[7] A jury trial was held on May 24 and 25, 2016. At trial, several officers testified that Levy's bedroom was the southwest bedroom on the second floor and that they had found cocaine, marijuana, and synthetic marijuana in the room. The owner of the house also testified that he had charged Levy rent to live in the house and that Levy lived in the "second [room] on the left"—the southwest room—at the top of the stairs. (Tr. 199). At the conclusion of the trial, the jury found Levy guilty as charged. Levy then waived his right to a jury trial on his conviction enhancements and pled guilty to having a prior conviction for dealing in cocaine.

[8] At the sentencing hearing, Levy requested that his sentences be suspended to probation because he had a job lined up after his release and had five children to support. The State introduced evidence that Levy had a prior criminal history, including two misdemeanor convictions, two felony convictions, and pending charges in a separate cause for being a serious violent felon in possession of a firearm and possession of marijuana. The State also introduced evidence that Levy had repeatedly violated his probation for some of those convictions and had committed the current offense while he was out on bond for his pending charges.

[9] The trial court found that Levy's criminal record and repeated violations of probation from earlier sentences were aggravating factors; it did not find any mitigating factors. It sentenced him to ten (10) years, with eight (8) years executed and two (2) years suspended to probation, for his possession of cocaine conviction; one (1) year for his possession of a synthetic drug conviction; and 180 days for his possession of marijuana conviction. The trial court further ordered Levy to serve the sentences concurrently for a total executed sentence of eight (8) years. Levy now appeals.

## Decision

[10] On appeal, Levy argues that: (1) there was insufficient evidence to convict him of possession of cocaine; and (2) his sentence was inappropriate in light of the nature of his offense and his character. We will address each of these arguments in turn.

## 1. Sufficiency

Levy challenges his conviction for possession of cocaine by arguing that there was insufficient evidence that he constructively possessed the cocaine. Specifically, he asserts that there was no evidence that he knew about the cocaine, had exclusive control over the bedroom where the cocaine was found, or had the ability to maintain control over the cocaine.

In order to convict Levy for possession of cocaine, the State had to prove that he: "knowingly or intentionally possess[ed] cocaine (pure or adulterated)" in an amount that was "at least five (5) but less than ten (10) grams."[4] I.C. §§ 35-48-4-6(a), -(c)(2). Possession of the cocaine may be either actual or constructive. *See Sargent v. State*, 27 N.E.3d 729, 732-33 (Ind. 2015). Actual possession occurs when a person has direct physical control over the cocaine, and constructive possession occurs when a person has "'the capability to maintain dominion and control over the [cocaine]; and (2) the intent to maintain dominion and control over [it].'" *Id.* at 733 (quoting *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011)).

When reviewing sufficiency of the evidence claims, we neither reweigh the evidence nor judge witness credibility. *Perkins v. State*, 57 N.E.3d 861, 864 (Ind. Ct. App. 2016). We consider only the evidence supporting the judgment and any reasonable inference that can be drawn from that evidence. *Id.* We will

---

[4] In order for the offense to qualify as a Level 4 felony, the State also had to prove that enhancing circumstances applied, but those circumstances are not at issue here.

affirm the conviction if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[14] It is undisputed that Levy did not have actual possession over the cocaine. Instead, he argues that the State did not present sufficient evidence that he constructively possessed the cocaine. He reasons that the State did not prove that he had the intent to maintain dominion and control over the cocaine because there was no evidence he knew it existed, and the State did not prove that he had the capability to maintain dominion and control over it because he did not have exclusive control over the premises. He notes that several people lived in the residence at the time of the search, and the police did not find him near the bedroom where the cocaine was located.

[15] To prove the intent element of constructive possession, the State must, as Levy asserts, demonstrate the defendant's knowledge of the presence of the contraband. *Crocker v. State*, 989 N.E.2d 812, 822 (Ind. Ct. App. 2013), *trans. denied.* However, "'[t]his knowledge may be inferred from either the exclusive dominion and control over the premise containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband.'" *Id.* (quoting *Taylor v. State*, 482 N.E.2d 259, 261 (Ind. 1985)). Among the recognized "additional circumstances" are: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband is in plain view;

and (6) location of the contraband is in close proximity to items owned by the defendant. *Jones v. State*, 807 N.E.2d 58, 65 (Ind. Ct. App. 2004), *trans. denied.*

[16] Levy argues that he did not have exclusive control over the residence or his bedroom because several other people lived in the house and used his room. However, we need not address whether Levy had exclusive control over his bedroom because, regardless, there were additional circumstances pointing to his knowledge of the contraband. *See Crocker*, 482 N.E.2d at 261 (stating that knowledge may be inferred from either exclusive domain and control over the premise containing the contraband *or* evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband). Specifically, the cocaine was close in proximity to items he owned. Corporal Gruber found three letters with Levy's name on them on a shelving unit in the bedroom.[5] Two of the letters listed the address of the house where the drugs were found, and another listed an address of a residence with which Levy was associated. The proximity of Levy's letters to the cocaine was an additional circumstance indicating his knowledge of the cocaine. Thus, we may infer his knowledge and intent to maintain dominion and control over the drugs. *See id.*

[17] Regarding the capability element of constructive possession, proof of a possessory interest in the premises in which the illegal drugs are found is

---

[5] Levy asserts that the letters were found in a dresser in the hallway rather than his bedroom. However, Corporal Gruber testified that he found the letters on a shelving unit in Levy's bedroom, and we will not reweigh the evidence. *See Perkins*, 57 N.E.3d at 864.

adequate to show the defendant's capability to maintain dominion and control over the contraband. *Id.* at 66. A defendant's possessory interest in the premises does not require actual ownership. *Id.* A house or apartment used as a residence is controlled by the person who lives in it, and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee. *Id.*

[18] Levy admitted that he lived in the southwest bedroom at 916 South Main Street, which is where the cocaine was found. Further, Levy's landlord testified that Levy paid rent and lived in the southwest corner bedroom on the second floor. Accordingly, we conclude that there was sufficient evidence that Levy had a possessory interest in the house and bedroom where the cocaine was found and, therefore, had the capability to exercise dominion and control over the cocaine. As we have already found that Levy had the intent to exercise dominion and control over the cocaine, we thus conclude that he had constructive possession of the drugs and that there was sufficient evidence to support his conviction.

## 2. Inappropriate Sentence

[19] Next, Levy argues that his sentence was inappropriate in light of the nature of his offense and his character. While sentencing decisions rest within the sound discretion of the trial court, a reviewing court may revise a sentence pursuant to Appellate Rule 7(B) if, "'after due consideration of the trial court's decision,'" it finds that the sentence is inappropriate in light of the nature of the offense and

the character of the offender. *Holt v. State*, 62 N.E.3d 462, 465 (Ind. Ct. App. 2016) (quoting *Anglemyer v. State*, 868 N.E.2d 482, 493 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 208 (Ind. 2007)). Whether a sentence is inappropriate ultimately turns on the "'culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case.'" *Id.* (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)).

[20] Here, Levy argues that he should have been sentenced to the advisory sentence for Level 4 felony possession of cocaine. INDIANA CODE § 35-50-2-4 provides that the sentencing range for a Level 4 felony is two (2) to twelve (12) years, and the advisory sentence is six (6) years. As Levy was sentenced to ten (10) years with two (2) years suspended to probation, his sentence is longer than the advisory sentence. Nevertheless, we find that Levy's sentence was not inappropriate in light of the nature of his offense and his character.

[21] As for the nature of his offense, Levy argues that "given the fact that [he] was one of many individuals in the home who had the potential for possessing the cocaine found, his culpability was diminished significantly." (Levy's Br. 15). We do not find this argument persuasive as Levy was convicted of possessing the cocaine, not the other people in the house. Instead, we find that the nature of Levy's offense supports his sentence. Officers commenced an investigation of Levy's residence after they received multiple citizen complaints of possible drug activity and drug transactions at the residence. Then, when officers searched the residence, they found significant amounts of drugs and paraphernalia used for dealing drugs, such as baggies and scales. Levy was

convicted of possessing three different types of drugs—cocaine, synthetic marijuana, and marijuana—and had scales and ammunition in his bedroom.

[22] As for his character, Levy notes that he has five children, had secured employment for his release, had been employed for two years prior to his arrest, had attended church, and enjoyed spending time with his children. However, Levy's criminal record is also a strong indication of his character. He has two prior misdemeanor convictions from 2005 and 2006—one no financial responsibility conviction and one weapons-carrying conviction. Then, in 2007, he was convicted of felony dealing in cocaine or a narcotic drug and had his probation revoked for that conviction. After he was released from the Department of Correction, he violated his parole and was found guilty of Class D felony escape. Subsequently, on August 26, 2015, he was charged with Level 4 felony unlawful possession of a firearm by a serious violent felon; Class B misdemeanor possession of marijuana; and Class A misdemeanor possession of marijuana with a prior conviction. While he was on bond in that case, he committed the offenses underlying the instant case. He also admitted to using marijuana while out on bond. These offenses and his overall criminal history indicate Levy's complete disregard and disrespect for the law. Further, we find it notable that Levy's offenses have increased in severity over time and that he has previously been convicted of other drug crimes. In light of this evidence of Levy's character, we conclude that his sentence was not inappropriate.

[23]

Affirmed.

Baker, J., and Mathias, J., concur.