

FILED

Oct 23 2017, 10:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria Bailey
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cameron Tibbs,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 23, 2017<br><br>Court of Appeals Case No.<br>49A02-1701-CR-154<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Grant W.<br>Hawkins, Judge<br><br>Trial Court Cause No.<br>49G05-1603-MR-10589 |

**Barnes, Judge.**

## Case Summary

[1]   Cameron Tibbs appeals his convictions for Level 6 Felony obstruction of justice and Class A misdemeanor carrying a handgun without a license.  We affirm.

## Issue

The sole issue before us is whether the trial court properly denied Tibbs's motion to transfer his case to juvenile court after he was found not guilty of murder.

## Facts

On December 13, 2015, LeStacia Harris drove Shanice Dozier and seventeen-year-old Tibbs to a gas station/convenience store in Indianapolis. Tibbs and Dozier waited outside in the car while Harris went inside to purchase some items. While Harris was inside, Dozier noticed some cash lying on the ground. She claimed she did not see anyone drop it, and she retrieved it while Tibbs stayed in the car. As Dozier got back in the car, a man—David Bowman—came running up to the car, claiming the cash was his. Bowman pushed down one of the car windows and said, "I'm about to kill you right now if you don't give me my money back." Tr. Vol. III. p. 16. Bowman put his hand into one of his pockets as if reaching for a gun. As Bowman repeatedly said he was going to kill Dozier, Tibbs said "No you're not." *Id.* at 19. After Bowman again said, "Oh, yes, I am," Tibbs pulled out a gun that he had in the car and fatally shot Bowman in the chest. *Id.* Harris had returned to the car by this point and immediately drove away. Dozier found a shell casing on the floor of the car and gave it to Tibbs, and she believes he "got rid of it." *Id.* at 36. Neither the shell casing nor the gun was ever found.

[4] The State charged Tibbs as an adult with murder, Level 6 felony obstruction of justice, Class A misdemeanor dangerous possession of a firearm, and Class A misdemeanor carrying a handgun without a license. The State later dismissed the dangerous possession of a firearm charge. While Tibbs was out on bond awaiting trial and on home detention, and after he turned eighteen, he was arrested and charged in Jackson County with aiding, inducing, or causing Level 3 felony armed robbery, Level 6 felony resisting law enforcement, and Class A misdemeanor resisting law enforcement. At the murder trial, Tibbs claimed self-defense, and the jury was instructed on that defense. The jury acquitted Tibbs of murder but found him guilty of Level 6 felony obstruction of justice and Class A misdemeanor carrying a handgun without a license.

[5] After the jury's verdict but before the trial court entered judgment of conviction and sentenced Tibbs, he petitioned to have his case transferred to juvenile court for adjudication and disposition. At a hearing on the petition, he presented testimony from a social worker and from his mother. The social worker testified generally about juvenile brain development, differences between the juvenile and adult criminal systems, and the disparate impact of an adult criminal conviction versus a delinquency adjudication. Tibbs's mother related that he had never been arrested prior to the shooting of Bowman, that he had not had serious discipline problems in school, and that he had extended family willing to support him. The State did not present evidence at the hearing, but it did submit a written memorandum of law arguing against transfer to juvenile

court to which it attached the charging information and officer incident report for the pending Jackson County charges.

[6] At the conclusion of the hearing, the trial court stated:

> But for the violation of my orders, I'd send him back to juvenile in a minute, even at age 18. But the violation of my orders also includes the arrest in Jackson County, where a gun was involved even if he didn't have it. . . . It's going to be up to someone else to convince me that during that hour long drive there was no idea what was going on. So the [sic] all of that information inclines me to decide not to send this back to juvenile.

Tr. Vol. IV pp. 137-38. The trial court did not issue a written order denying Tibbs's motion to transfer, but the denial is reflected in the chronological case summary. Tibbs now appeals.

## Analysis

[7] Tibbs's specific claim on appeal is that the trial court was required to enter findings explaining why it denied his motion to transfer his case to juvenile court and that the trial court's oral statement at the conclusion of the hearing on his motion was inadequate. Indiana Code Section 31-30-1-4 provides in part:

> (a) The juvenile court does not have jurisdiction over an individual for an alleged violation of:
>
>> (1) IC 35-41-5-1(a) (attempted murder);
>>
>> (2) IC 35-42-1-1 (murder);

(3) IC 35-42-3-2 (kidnapping);

(4) IC 35-42-4-1 (rape);

(5) IC 35-42-4-2 (criminal deviate conduct) (before its repeal);

(6) IC 35-42-5-1 (robbery) if:

    (A) the robbery was committed while armed with a deadly weapon; or

    (B) the robbery results in bodily injury or serious bodily injury;

(7) IC 35-42-5-2 (carjacking) (before its repeal);

(8) IC 35-47-2-1 (carrying a handgun without a license), if charged as a felony;

(9) IC 35-47-10 (children and firearms), if charged as a felony; or

(10) any offense that may be joined under IC 35-34-1-9(a)(2) with any crime listed in this subsection;

if the individual was at least sixteen (16) years of age but less than eighteen (18) years of age at the time of the alleged violation.

* * * * *

(c) If:

(1) an individual described in subsection (a) is charged with one (1) or more offenses listed in subsection (a);

(2) all the charges under subsection (a)(1) through (a)(9) resulted in an acquittal or were dismissed; and

(3) the individual pleads guilty to or is convicted of any offense other than an offense listed in subsection (a)(1) through (a)(9);

the court having adult criminal jurisdiction may withhold judgment and transfer jurisdiction to the juvenile court for adjudication and disposition. In determining whether to transfer jurisdiction to the juvenile court for adjudication and disposition, the court having adult criminal jurisdiction shall consider whether there are appropriate services available in the juvenile justice system, whether the child is amenable to rehabilitation under the juvenile justice system, and whether it is in the best interests of the safety and welfare of the community that the child be transferred to juvenile court. . . .

[8]  The language under which Tibbs filed his motion—subsection (c) of the statute—was enacted in 2016 and has not yet been the subject of an appellate opinion.[1] Here, Tibbs had to be charged in adult court for murder under subsection (a)(2). But, when he was acquitted of that charge and only convicted of obstruction of justice and misdemeanor carrying a handgun without a license, he was eligible for consideration of what might be called a "reverse

---

[1] This amendment was effective July 1, 2016—after Tibbs committed these offenses but before his trial. The State makes no argument that the statute was inapplicable to Tibbs.

transfer" to juvenile court for disposition, rather than being convicted and sentenced in adult court.

[9] The "reverse transfer" statute states that a trial court "*may* withhold judgment and transfer jurisdiction to the juvenile court for adjudication and disposition" after consideration of several enumerated factors. "The term 'may' in a statute ordinarily implies a permissive condition and a grant of discretion." *Tongate v. State*, 954 N.E.2d 494, 496 (Ind. Ct. App. 2011), *trans. denied*. It logically follows that a trial court's ruling on a "reverse transfer" request would be reviewed for an abuse of discretion. *See, e.g.*, *Lyles v. State*, 834 N.E.2d 1035, 1046 (Ind. Ct. App.2005) (noting that whether to grant a mistrial is within the trial court's discretion and is reviewed on appeal for an abuse of that discretion), *trans. denied*. An abuse of discretion occurs when a trial court's decision is clearly against the logic and effect of the facts and circumstances, or when the trial court misinterprets the law. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013).

[10] Tibbs does not directly challenge the merits of the trial court's ruling. The narrow inquiry here is whether the trial court abused its discretion in not entering more detailed findings supporting its decision to deny Tibbs's "reverse transfer" petition. Effectively, Tibbs contends the trial court misinterpreted the law as not requiring detailed findings and that we should remand for the entry of such findings. We disagree.

[11] As a matter of statutory interpretation, we will not ordinarily read requirements into clear and unambiguous statutes that are not there. *Mitchell v. State*, 813 N.E.2d 422, 429 (Ind. Ct. App. 2004), *trans. denied*. The "reverse transfer" statute contains no requirement that the trial court enter findings. If the legislature had wanted to require such findings, it knows how to do so. *See Lucas v. McDonald*, 954 N.E.2d 996, 998-99 (Ind. Ct. App. 2011) (holding trial court did not err in failing to enter findings in support of its denial of petition to be removed from lifetime sex offender registry because statute only required such findings if a petition was approved). In fact, there is an express statutory requirement for a trial court to enter findings in support of a discretionary decision to waive a juvenile into adult court. Ind. Code § 31-30-3-10. The legislature chose not to enact such a requirement for a "reverse waiver," and we will not read one into the statute.

[12] Tibbs argues as a more general proposition that a trial court should enter findings regarding a "reverse waiver" decision by relying upon our supreme court's non-statutory requirement that trial courts enter detailed statements in support of sentences they impose upon defendants. *See, e.g.*, *Anglemyer v. State*, 868 N.E.2d 482, 489 (Ind. 2007), *aff'd on reh'g*, 875 N.E.2d 218 (Ind. 2007). However, Tibbs has not cited any case that has applied the sentencing statement requirement outside the context of sentencing. That requirement was established for a number of reasons specific to sentencing and the constitutional authority of Indiana appellate courts to review and revise sentences, including: guarding against arbitrary and capricious sentences; providing an adequate

basis for appellate review; contributing to the rationality and consistency of sentences; explaining to the public and the defendant why a particular sentence was imposed; fostering acceptance of the sentence by the defendant in the furtherance of rehabilitation; and fostering acceptance of the sentence by the public to promote confidence in the criminal justice system. *Id.* (quoting *Abercrombie v. State*, 274 Ind. 407, 412, 417 N.E.2d 316, 319 (1981)).

[13] Aside from sentencing decisions, trial courts in Indiana generally have no obligation to enter findings in support of their rulings in criminal cases. *See Willsey v. State*, 698 N.E.2d 784, 789 (Ind. 1998).[2] Tibbs contends that the importance of a "reverse waiver" ruling should necessitate findings in support of the denial of such a petition. Although such a ruling is indeed important, it is not more so than a ruling on a motion to suppress, the outcome of which could determine whether a prosecution can proceed, and which does not require findings. *Id.* In fact, a trial court is not even required to enter findings to support a judgment of conviction following a bench trial, which is the most consequential decision a trial court can make. *See Miller v. State*, 72 N.E.3d 502, 517 (Ind. Ct. App. 2017), *summarily aff'd in relevant part*, 77 N.E.3d 1196, 1197 (Ind. 2017). We decline to impose a requirement that trial courts enter findings in support of rulings on a motion for "reverse waiver" under Indiana Code Section 31-30-1-4(c).

---

[2] As the *Willsey* opinion noted, such findings generally are required in the federal courts, at least with respect to pre-trial motions. *See* Fed. Rule Crim. Proc. 12(d).

# Conclusion

The trial court did not abuse its discretion and was not required to enter findings in support of its decision to deny Tibbs's motion to transfer his case to juvenile court. We affirm his convictions for Level 6 felony obstruction of justice and Class A misdemeanor carrying a handgun without a license.

Affirmed.

May, J., and Bradford, J., concur.