

FILED

May 09 2018, 8:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer G. Schlegelmilch
Lawrence County Public Defender
Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jerold W. Leatherman,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 9, 2018<br><br>Court of Appeals Case No.<br>47A04-1711-CR-2711<br><br>Appeal from the Lawrence<br>Superior Court<br><br>The Honorable William G. Sleva,<br>Judge<br><br>Trial Court Cause No.<br>47D02-1703-F6-292 |

**Bailey, Judge.**

# Case Summary

Jerold W. Leatherman ("Leatherman") appeals his convictions for maintaining a common nuisance, a Level 6 felony,[1] and possession of paraphernalia, as a Class C misdemeanor.[2]

We affirm in part and reverse in part.

# Issues

Leatherman raises the following two issues:

    I.    Whether the State provided sufficient evidence to support his conviction for maintaining a common nuisance.

    II.    Whether the State provided sufficient evidence to support his conviction for possession of paraphernalia.

# Facts and Procedural History

On February 27, 2017, Sergeant Justin Dodd ("Sgt. Dodd") of the Bedford Police Department and Detective Chris Roberts ("Det. Roberts") of the Lawrence County Sheriff's Department were investigating a tip regarding possible drug dealing and prostitution near Frank Street in Mitchell, Indiana. While patrolling the area in an unmarked vehicle, the two officers saw

---

[1] Ind. Code § 35-45-1-5 (2017).

[2] I.C. § 35-48-4-8.3.

Leatherman, who was driving a van that had been parked alongside the road, drive a short distance to another home on nearby Meridian Street. A man exited the house and approached Leatherman's van. Leatherman then backed out of the driveway and parked his van alongside the road on Frank Street.

[5] As Det. Roberts, who was driving the officers' vehicle, drove past Leatherman's van on the driver's side, Leatherman opened the driver's side door and nearly struck the officers' vehicle. Det. Roberts stopped the vehicle and, as he approached Leatherman's vehicle, he instructed Leatherman to "be a little more careful" about opening his car door. Tr. Vol. II at 71-72. In accordance with safety protocol, Sgt. Dodd also exited the truck and approached Leatherman's van on the passenger's side. When he crossed behind the van, Sgt. Dodd saw Leatherman pass a small bag to the female passenger, Heather Ditton ("Ditton"), who was sitting in the front seat. Sgt. Dodd then saw Ditton pull out the elastic waistband of her pants and place the baggie inside her vagina.

[6] Sgt. Dodd knocked on the passenger window of the van and asked Ditton, "Are you done shoving that?" *Id.* at 96, 103. Ditton responded, "I'm on my period and I don't have tampons, it's napkins[,] I swear." *Id.* at 103. Sgt. Dodd escorted Ditton from the van and Ditton removed the bag from her vagina. Sgt. Dodd observed that the bag contained a white crystal substance, which was later confirmed by lab testing to be methamphetamine.

[7] After Ditton turned over the bag of methamphetamine to Sgt. Dodd, Det. Roberts ordered Leatherman to exit the van. Det. Roberts conducted a pat

down of Leatherman and discovered two syringes hidden in Leatherman's pockets. Leatherman informed Det. Roberts that the syringes were from the Lawrence County Needle Exchange Program in which Leatherman participated. Det. Roberts, "a drug recognition specialist," saw that the syringes contained a liquid residue and had grey caps that indicated that they were from the needle exchange program. Tr. Vol. II at 68.

[8] The officers placed both Leatherman and Ditton in handcuffs and called a drug-sniffing dog to the scene. While sniffing the perimeter of Leatherman's van, the dog gave a positive alert for narcotics three times. The officer conducting the dog sniff observed a syringe sitting on the dashboard underneath a cellular phone. A subsequent search of the vehicle revealed the presence of an additional syringe that had been hidden inside a purse located on the passenger side of the vehicle.

[9] On March 1, 2017, the State charged Leatherman with Count I, maintaining a common nuisance, a Level 6 felony; Count II, possession of methamphetamine, as a Level 6 felony;[3] and Count III, possession of paraphernalia, as a Class C misdemeanor. On April 17, 2017, the State filed an amended information, which included a habitual offender sentence enhancement. Following Leatherman's May 24 jury trial, the jury found Leatherman guilty on all three counts. Leatherman admitted to his status as a habitual offender. At a

---

[3] I.C. § 35-48-4-6.1. Leatherman does not challenge his conviction for that charge.

sentencing hearing conducted on August 22, Leatherman was sentenced to two years for Count I, two years for Count II, and 60 days for Count III, with the sentences for Counts I and II to run concurrently with no time suspended. One count was enhanced by three years due to Leatherman's habitual offender status. This appeal ensued.

# Discussion and Decision

## Standard of Review

[10] Leatherman challenges the sufficiency of the evidence to support his convictions for maintaining a common nuisance, as a Level 6 felony, and possessing paraphernalia, as a Class C misdemeanor. Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*. Moreover, "[a] conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling the factfinder to find the

defendant guilty beyond a reasonable doubt." *Lawrence v. State*, 959 N.E.2d 385, 388 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*.

# Sufficiency of the Evidence—Maintaining a Common Nuisance

[11] To support Leatherman's conviction for maintaining a common nuisance, the State was required to prove that Leatherman knowingly or intentionally maintained a vehicle to unlawfully use, manufacture, keep, offer for sale, sell, deliver, or finance the delivery of a controlled substance. I.C. § 35-45-1-5(a) and (c). The word "maintain," as used in that statute, does not require that the defendant actually own the vehicle; rather, a defendant "maintains" a vehicle when he exerts control over it. *E.g.*, *Mack v. State*, 23 N.E.3d 742, 758 (Ind. Ct. App. 2014), *trans. denied*.

[12] At trial, the State provided evidence that Leatherman exerted control over the van he was driving, although the van was actually owned by his cousin. The State also provided evidence that, while in the van, Leatherman not only possessed a controlled substance himself, but also handed a bag of methamphetamine to Ditton. Sgt. Dodd testified that he personally witnessed that exchange of the drugs. That was sufficient evidence that Leatherman used the van to unlawfully "deliver" a controlled substance. I.C. § 35-45-1-5(a)(3)(G).

[13] *Lovitt v. State*, 915 N.E.2d 1040 (Ind. Ct. App. 2009), cited by both parties, is consistent with our holding. In *Lovitt*, a panel of this court held that the

legislature did not intend for the "maintaining a common nuisance" statute to apply to "an offender who has personal use quantities of controlled substance(s) on his or her person or even loose in the vehicle." *Id*. at 1045. Rather, we held that the statute is intended to apply to "an offender who uses his or her vehicle to facilitate … delivery … of a controlled substance." *Id*. The State provided sufficient evidence that Leatherman is just such an offender.

[14] However, to prove the nuisance was a "common" nuisance, the State must provide evidence that the vehicle was used on more than one occasion for the unlawful delivery of a controlled substance. *See Zuniga v. State*, 815 N.E.2d 197, 200 (Ind. Ct. App. 2004) (holding "the term 'common nuisance' as used in the statute requires proof of a continuous or recurrent violation"). This requirement is apparent from the judicial and legislative history of the crime of maintaining a common nuisance. In *Wells v. State*, the court described what constitutes a common nuisance, and explained that inherent in this classification is "a notion of continuous or recurrent violation. . . . The words 'maintains' and 'maintaining' denote continuous or recurrent acts approaching permanence." 351 N.E.2d 43, 46 (Ind. Ct. App. 1976). The court held that, for the purposes of maintaining or visiting a common nuisance, the statute "requires a showing of more than an isolated or casual instance of the prohibited activity." *Id*. at 47.

[15] In 1998, however, the General Assembly amended the common nuisance statute and added introductory language stating: "A person who knowingly or intentionally maintains a building, structure, vehicle, or other place *that is used*

*one (1) or more times. . .*" I.C. § 35-48-4-13(b) (2008) (emphasis added). Under the 2008 version of the statute, there was no requirement for ongoing instances of prohibited activity; as the Seventh Circuit noted in *Wheeler v. Lawson*, the 2008 version of the statute abrogated *Wells*. 539 F.3d 629, 635 n.7 (7th Cir. 2008).

[16] The "one or more times" language remained in the statute for several years, until the statute was again updated in Indiana Code Section 35-45-1-5 (2016) to remove that language. 2016 Legis. Serv. P.L. 59-2016, §§ 7, 8. The 2016 amendment of the statute is significant in that it evinces a conscious desire on the part of our Legislature that the common nuisance statute *not* be applied to isolated instances of prohibited activity. As our Supreme Court has noted,

> We have stated on numerous occasions that [a] fundamental rule of statutory construction is that an amendment changing a prior statute indicates a legislative intention that the meaning of the statute has changed. We have also relied on a rule of statutory construction to the effect that when language from an earlier version of a statute is deleted, the Legislature intended to change the law by removing that language.

*State v. Boles*, 810 N.E.2d 1016, 1019 (Ind. 2004) (quotations and citations omitted). Moreover, when construing a statute, we presume that the legislature had "in mind the history of the act and the decisions of the courts upon the subject matter of the legislation being construed." *Reynolds v. Dewees*, 797 N.E.2d 798, 800 (Ind. Ct. App. 2003).

[17] Here, it is clear that the legislature intended by the removal of the "one or more times" language to restore the prior common law and statutory requirement that a common nuisance is one in which continuous or recurrent prohibited activity takes place. I.C. § 35-45-5-1(a), (c). Because the State failed to provide evidence that the vehicle Leatherman drove had been used on multiple occasions for the delivery of a controlled substance, the State failed to provide sufficient evidence to support Leatherman's conviction of maintaining a common nuisance. We must reverse that conviction.

## Sufficiency of the Evidence—Possession of Paraphernalia

[18] To support Leatherman's conviction for possession of paraphernalia as a Class C misdemeanor, the State was required to prove that Leatherman knowingly or intentionally possessed an instrument, device, or other object that he intended to use for introducing into his body a controlled substance. I.C. § 35-48-4-8.3(b)(1). The State provided evidence that Leatherman had been in possession of a bag of methamphetamine, that he handed that bag to Ditton, that the substance in the bag tested positive for methamphetamine, that Leatherman was in possession of two syringes that contained an unidentified liquid, and that two other syringes were located in the vehicle.

[19] Intent to introduce a controlled substance into one's body may be inferred from circumstantial evidence. *E.g.*, *Halsema v. State*, 823 N.E.2d 668, 673 n.1 (Ind. 2005). And "this Court has held that the simultaneous possession of an illegal drug and an instrument for administering that particular illegal drug is sufficient

to establish the intent" to use the instrument to introduce drugs into the body. *Berkhardt v. State*, 82 N.E.3d 313, 318 (Ind. Ct. App. 2017) (citing *McConnell v. State*, 540 N.E.2d 100, 103 (Ind. Ct. App. 1989)); *see also Perkins v. State*, 57 N.E.3d 861, 866 (Ind. Ct. App. 2016) (finding sufficient evidence of possession of paraphernalia where unused syringes were found in the same container as a bottle cap that contained a controlled substance).

[20] Here, the State provided evidence that Leatherman had possessed methamphetamine and delivered it to Ditton, and Det. Roberts testified that he found two used syringes on Leatherman's person. And, although the State did not provide evidence regarding what liquid was in the syringes, such evidence was not necessary. Rather, evidence of possession of even a small amount of a controlled substance—such as the bag of methamphetamine—together with possession of paraphernalia that can be used to introduce the controlled substance into the body provides sufficient circumstantial evidence of the intent to use the paraphernalia. *Perkins*, 57 N.E.3d at 864-65.

[21] However, Leatherman contends that his conviction for possession of paraphernalia must be reversed because he had "legal authority" to possess the syringes under the local needle exchange program. In support, he cites Indiana Code Section 35-41-3-1, which provides that "[a] person is justified in engaging in conduct otherwise prohibited if he has legal authority to do so." But Leatherman raises that argument for the first time on appeal; therefore, it is waived. Moreover, he has failed to show that the conviction was obtained because of fundamental error.

It is well-established that we generally will not address an argument that was not raised in the trial court and is raised for the first time on appeal.

> [A] trial court cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. Accordingly, as a general rule, a party may not present an argument or issue on appeal unless the party raised that argument or issue before the trial court. *Marshall v. State*, 621 N.E.2d 308, 314 (Ind. 1993). In such circumstances the argument is waived. *Id.*

*Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004). Here, Leatherman did not raise a "legal authority" argument below.[4] Therefore, he has waived our consideration of his argument on appeal.

In an effort to avoid waiver, Leatherman raises a cursory allegation that his conviction of possession of paraphernalia was obtained due to fundamental error.[5] As this court has routinely stated, merely calling an error fundamental does not make it so. *See, e.g.*, *Taylor v. State*, 614 N.E.2d 944, 947 (Ind. Ct. App. 1993), *trans. denied*. Rather, in order to be fundamental, the error must be so prejudicial to the rights of the defendant that he could not have received a fair trial. *Id.* We have also characterized fundamental error as error that constitutes

---

[4] We disagree with Leatherman's assertion that defense counsel's passing remarks in closing argument suggesting that Leatherman had obtained the needles from the needle exchange program sufficiently raised the "legal authority" argument.

[5] Leatherman's brief assumes that he raised the legal authority argument below, and raises the idea of "fundamental error" only in passing. Appellant's Br. at 12-17. And Leatherman did not address the legal authority assertion at all in his reply brief.

a clear, blatant violation of basic and elementary principles, and that causes or could cause substantial harm. *Id.*

[24] Here, waiver notwithstanding, we nevertheless choose to address Leatherman's claim that it was fundamental error to not recognize his "legal authority" defense. The statute providing for the creation of needle exchange programs was not intended to—and does not—confer upon its participants immunity from prosecution for possession of paraphernalia. The goal of statutory interpretation is to discern and further the intent of the legislature, and the best evidence of legislative intent is the language of the statute itself. *E.g., Doe 1 v. Boone Cty. Prosecutor*, 85 N.E.3d 902, 908 (Ind. Ct. App. 2017). If the language of a statute is clear and unambiguous, we simply apply the statute's plain and ordinary meaning, heeding both what the statute says and what it does not say. *Id*. As a matter of statutory interpretation, "we will not ordinarily read requirements into clear and unambiguous statutes that are not there." *Tibbs v. State*, 86 N.E.3d 401, 405 (Ind. Ct. App. 2017), *trans. denied*.

[25] Chapter 7.5 of Title 16, Article 41, governs the establishment of needle exchange programs in Indiana. Indiana Code Section 16-41-7.5-5 (2017) allows a county to establish a needle exchange program if:

> (A) There is an epidemic of hepatitis C or HIV.
>
> (B) [T]he primary mode of transmission of hepatitis C or HIV in the county is through intravenous drug use.

> (C) [A] syringe exchange program is medically appropriate as part of a comprehensive public health response.

Furthermore, a "law enforcement officer may not stop, search, or seize an individual based on the fact the individual has attended a program under this chapter." I.C. §16-41-7.5-9(a). And the "fact an individual has attended a program under this chapter may not be the basis, in whole or in part, for a determination of probable cause or reasonable suspension by a law enforcement officer." I.C. §16-41-7.5-9(b).

[26] Nowhere in the Chapter on needle exchange programs does the legislature evince an intent to carve out an exception to the crime of possession of paraphernalia under Indiana Code Section 35-48-4-8.3(b)(1). Rather, it is apparent that Section 16-41-7.5-9 protects the means by which individuals in counties with certain disease epidemics obtain hypodermic syringes. It does so by prohibiting mere possession of a needle obtained through the program or attendance at the program as bases for arrest or prosecution. Nothing in the language of the statute purports to condone unlawful conduct that transpires after an individual has obtained a needle from the exchange program. Thus, while Leatherman could not be prosecuted for obtaining hypodermic needles from a needle exchange or participating in a needle exchange program, he could be found guilty of possession of paraphernalia if there was evidence that he intended to use those syringes for unlawful ends. The State provided sufficient evidence of Leatherman's intent to do just that. Therefore, we affirm his conviction for possession of paraphernalia, as a Class C misdemeanor.

# Conclusion

The State provided sufficient evidence to support Leatherman's conviction of possession of paraphernalia, as a Class C misdemeanor, and we affirm that conviction. However, the State failed to provide sufficient evidence that the vehicle Leatherman drove had been used on multiple occasions for the delivery of a controlled substance, which was an essential element of the crime of maintaining a common nuisance. Therefore, we reverse his conviction for that crime.

Affirmed in part, reversed in part.

Crone, J., and Brown, J., concur.