

FILED

Dec 04 2018, 7:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sebastian Durstock,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 4, 2018

Court of Appeals Case No.
15A01-1711-CR-2718

Appeal from the Dearborn Circuit
Court

The Honorable James D.
Humphrey, Judge

Trial Court Cause No.
15C01-1705-F2-7

**Tavitas, Judge.**

# Case Summary

Sebastian Durstock appeals his conviction for dealing in a narcotic drug, a Level 2 felony. This case involves the analysis of the Fourth Amendment and exceptions to the warrant requirement. We affirm.[1]

# Issues

Durstock raises three issues, which we restate as:

I. Whether the trial court abused its discretion by admitting evidence found during a pat down search of Durstock.

II. Whether the evidence is sufficient to sustain Durstock's conviction for dealing in a narcotic drug, a Level 2 felony.

III. Whether Durstock's sentence is inappropriate.

# Facts

On the morning of January 13, 2017, Officer David Schwarz of the Lawrenceburg Police Department was dispatched to an apartment in Lawrenceburg regarding an unconscious female, later identified as Chyanne Thompson. Emergency medical services arrived at the same time as Officer Schwarz. They discovered Candy Gaylord giving Thompson chest

---

[1] Oral argument was held in this matter on November 13, 2018, at Ivy Tech Community College – Columbus. We thank counsel for their presentations and Ivy Tech Community College – Columbus for its hospitality.

compressions. Given Thompson's symptoms, Officer Schwarz suspected that Thompson had overdosed on opiates.

[4] As the emergency medical personnel were assisting Thompson, Officer Schwarz heard water running in the bathroom. Officer Schwarz saw Durstock leave the bathroom and sit on the couch in the living room. Officer Schwarz talked to Gaylord and learned that Gaylord was the resident of the apartment. Gaylord gave Officer Bill Lynam permission to search the bathroom of the apartment, where he located a brown backpack. Gaylord and Durstock denied that the backpack belonged to them, and Gaylord gave the officer permission to search the backpack. Officer Lynam discovered a loaded handgun wrapped in a wet bandana, digital scales, men's clothing, and men's deodorant.

[5] Durstock appeared to be "nervous and shaking and sweaty." Tr. Vol. II p. 102. After learning of the firearm, Officer Troy Cochran decided to perform a pat down search of Durstock for officer safety. Officer Cochran asked Durstock if Durstock "had anything that we needed to be concerned about." *Id.* at 103. Durstock removed a lighter, cigarettes, a cell phone, and lip balm from his pockets. Durstock put his hand in one of his pockets and removed his hand without removing anything from his pocket. Durstock's movements made Officer Schwarz suspicious, and he asked Durstock to stand for a pat down for weapons.

[6] Officer Schwarz felt a "tubular object" in Durstock's pocket that was "consistent with being a syringe." *Id.* at 62. Officer Schwarz removed the item

from Durstock's pocket and found that it was, in fact, a syringe. Officer Schwarz then arrested Durstock for possession of a hypodermic syringe. *See* Ind. Code § 16-42-19-18. Durstock was placed in handcuffs, and Officer Schwarz performed a search incident to the arrest. Officer Schwarz found several items in Durstock's pockets, including three bullets and a black bag that contained $331 in cash, rolling papers, and a plastic bag containing a white powder. The white powder was later identified as 6.06 grams of fentanyl.

[7] After several amendments, the State ultimately charged Durstock with dealing in a narcotic drug, a Level 2 felony; possession of a narcotic drug, a Level 4 felony; and possession of a narcotic drug, a Level 5 felony. At Durstock's jury trial, Durstock objected to the admission of evidence found during the pat down search, and the trial court overruled the objection.[2] During the jury trial, several recorded jail telephone calls made by Durstock were admitted into evidence. In one of the calls, Durstock stated that he had been "hustling," which a detective testified was slang for dealing. Ex. 45. The jury found Durstock guilty as charged.

[8] Due to double jeopardy concerns, the trial court entered judgment of conviction only on dealing in a narcotic drug, a Level 2 felony. The trial court sentenced

---

[2] At the jury trial, Durstock presented an "oral motion to suppress," and the trial court held a hearing on the motion to suppress outside the presence of the jury. Tr. Vol. II pp. 48-49. The trial court denied the motion.

Durstock to seventeen and one-half years with two and one-half years suspended to probation. Durstock now appeals.

# Analysis

## I. Admission of Evidence

Durstock argues that the trial court erred by denying his motion to suppress. However, because Durstock appeals from a completed jury trial, the issue is more appropriately framed as whether the trial court properly admitted the evidence at trial. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). "The general admission of evidence at trial is a matter we leave to the discretion of the trial court." *Id.* at 259-60. "We review these determinations for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* at 260.

Durstock argues that the pat down search was improper because the officers had no reasonable suspicion that Durstock was armed and dangerous. The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by prohibiting them without a warrant supported by probable cause.[3] U.S. Const. amend. IV. "The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their

---

[3] Durstock makes no argument under the Indiana Constitution.

persons, their homes, and their belongings." *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006). This protection has been "extended to the states through the Fourteenth Amendment." *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). "As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception." *Clark*, 994 N.E.2d at 260. "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Bradley*, 54 N.E.3d at 999.

[11] In *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), the United States Supreme Court permitted a:

> reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Terry*, 392 U.S. at 27, 88 S. Ct. at 1883 (internal citations and footnote omitted); *see also Wilson v. State*, 745 N.E.2d 789, 792 (Ind. 2001).

[12] Durstock argues that the officers had "no reasonable suspicion that Durstock was armed and dangerous" and that the "pat-down of Durstock was illegal and any evidence obtained as a result should have been suppressed." Appellant's Br. p. 13. The State argues that the pat down was proper because: (1) officers had indications that Durstock was involved in drug activity and was acting nervous; (2) a loaded handgun was found in a backpack in the restroom, where Durstock had recently been; (3) the backpack also contained men's clothing; and (4) Gaylord, the apartment's female resident, denied ownership of the backpack.

[13] Under the circumstances, we conclude that a reasonably prudent man would be warranted in the belief that his safety was potentially in danger, and we cannot say that the pat down search violated the Fourth Amendment. The officers were aware that a loaded handgun had been found wrapped in a wet bandana in a backpack in the restroom, which Durstock had recently occupied. The backpack contained men's clothing, and the female resident of the apartment denied ownership of the backpack. Durstock, who was acting strangely, was the only male in the apartment. The officers were reasonably concerned that the weapon belonged to Durstock and that their safety was in jeopardy. The pat down search was proper. *See, e.g., Johnson v. State*, 38 N.E.3d 658, 663 (Ind. Ct. App. 2015) (holding that a pat down search for weapons was proper where the defendant kept placing his hand in his pocket and refused an officer's multiple commands to remove his hand from his pocket), *trans. denied*.

[14] Durstock next argues that, even if the pat down was proper, the removal of the syringe from his pocket was improper. "The purpose of a protective search authorized by *Terry* 'is not to discover evidence of a crime, but rather to allow the officer to pursue his investigation without fear of violence.'" *Clanton v. State*, 977 N.E.2d 1018, 1025 (Ind. Ct. App. 2012) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S. Ct. 2130, 2136 (1993)). "During this limited search, an officer is permitted to remove an item that feels like a weapon from an individual's outer clothing to determine whether the item is in fact a weapon." *Id.* "In addition, the 'plain-feel doctrine' approved by *Dickerson* permits an officer to remove non-weapon contraband during a *Terry* frisk if the contraband is detected during an initial patdown for weapons and if the incriminating nature of the contraband is immediately ascertained by the officer." *Id.* (citing *Harris v. State*, 878 N.E.2d 534, 538-39 (Ind. Ct. App. 2007), *trans. denied*).

[15] Durstock argues that the "tube" detected by the officer was not immediately ascertainable as contraband. The State contends that the officer immediately realized that the tubular object was a syringe and that the removal of the object from Durstock's pocket was proper. We agree with the State. The officer testified that he felt a "tubular object" in Durstock's pocket that was "consistent with being a syringe." Tr. Vol. II p. 62. The syringe's identity was immediately apparent to the officer based on its shape, and the officer's warrantless seizure of the syringe was justified under the plain feel doctrine. *See, e.g., Wright v.*

*State*, 766 N.E.2d 1223, 1234 (Ind. Ct. App. 2002) (holding that the officer's seizure of rock cocaine was justified under the plain feel doctrine).

[16] Because the removal of the item from Durstock's pocket was permissible, the officers properly arrested Durstock for possession of a syringe. The possession of a hypodermic syringe is a Level 6 felony. *See* Ind. Code § 16-42-19-18. One exception to the warrant requirement is the search incident to arrest, which permits "a search of the arrestee's person and the area within his or her control." *Clark*, 994 N.E.2d at 261 n.10. Accordingly, once a person is arrested, officers are not required to obtain a warrant before conducting a further search of the arrestee's person. This search incident to Durstock's arrest resulted in the officers finding the fentanyl and cash in Durstock's pocket. We conclude that the officers' discovery of the fentanyl and cash in Durstock's pocket did not violate the Fourth Amendment, and the trial court properly admitted the evidence.

[17] In sum, the pat down search, the removal of the syringe under the plain feel doctrine, and the search incident to arrest, are exceptions to the warrant requirement of the Fourth Amendment. The evidence obtained was properly admitted.

## II. Sufficiency of the Evidence

[18] Durstock challenges the sufficiency of the evidence with respect to his conviction for dealing in a narcotic, a Level 2 felony. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge

witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *reh'g denied, cert. denied*, 475 U.S. 1031, 106 S. Ct. 1241 (1986)), *reh'g denied, cert. denied*, 137 S. Ct. 1082 (2017). Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*.* "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[19] Durstock was convicted of dealing in a narcotic drug, a Level 2 felony, which is governed by Indiana Code Section 35-48-4-1. At the time of Durstock's offense, the State was required to prove that Durstock knowingly possessed with intent to deliver "a narcotic drug, pure or adulterated, classified in schedule I or II," and that "the amount of the drug involved is at least five (5) grams but less than ten (10) grams and an enhancing circumstance applies."

Ind. Code § 35-48-4-1(a)(2), (e)(2).[4] One enhancing circumstance occurs when the "person committed the offense while in possession of a firearm." I.C. § 35-48-1-16.5(2).

[20] Durstock challenges only whether the State proved an intent to deliver. Indiana Code Section 35-48-4-1(b) provides:

> A person may be convicted of an offense under subsection (a)(2) only if:
>
> (1) there is evidence in addition to the weight of the drug that the person intended to manufacture, finance the manufacture of, deliver, or finance the delivery of the drug; or
>
> (2) the amount of the drug involved is at least twenty-eight (28) grams.

The fentanyl here weighed slightly over six grams. Consequently, the State was required to show "evidence in addition to the weight of the drug that [Durstock] intended to . . . deliver . . . the drug." I.C. § 35-48-4-1(b). "Intent, being a mental state, can only be established by considering the behavior of the relevant actor, the surrounding circumstances, and the reasonable inferences to be drawn therefrom." *Richardson v. State*, 856 N.E.2d 1222, 1227 (Ind. Ct. App.

---

[4] Amended by Pub. L. No. 252-2017, § 21 (eff. July 1, 2017).

2006), *trans. denied.* Circumstantial evidence showing possession with intent to deliver may support a conviction. *Id.*

[21] Durstock argues that the evidence is insufficient to show that he intended to deliver the fentanyl. We conclude that Durstock's argument is merely a request to reweigh the evidence, which we cannot do. The State presented evidence that Durstock admitted in a recorded jail call that he was "hustling," which a detective testified was slang for dealing. Ex. 45. The evidence of the recorded call along with evidence that Durstock was in possession of digital scales, a handgun, and $331 in cash are sufficient to demonstrate that Durstock intended to deliver the fentanyl. Accordingly, the evidence is sufficient to sustain Durstock's conviction for dealing in a narcotic drug, a Level 2 felony.

### III. Inappropriate Sentence

[22] Next, Durstock argues that his sentence is inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." *McCain v. State,* 88 N.E.3d 1066, 1067 (Ind. 2018). The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Phipps v. State,* 90 N.E.3d 1190, 1198 (Ind. 2018). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Shoun v. State,* 67

N.E.3d 635, 642 (Ind. 2017). Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Cardwell,* 895 N.E.2d at 1224.

[23] In determining whether a sentence is inappropriate, we look to the statutory ranges established for the classification of the relevant offense. Durstock was convicted of a Level 2 felony. The sentence for a Level 2 felony ranges from ten years to thirty years, with an advisory sentence of seventeen and one-half years. Ind. Code § 35-50-2-4.5. Here, the trial court imposed an advisory sentence of seventeen and one-half years with two and one-half years suspended to probation.

[24] Durstock argues that his criminal history was minimal, he struggled with addiction, and he had the support of his family. Durstock also contends that his involvement "in the criminal enterprise was extremely minimal" and claimed that the fentanyl belonged to Thompson. Appellant's Br. p. 18.

[25] The nature of the offense is that Durstock was in Gaylord's apartment when Thompson overdosed and required police and emergency medical services to respond. Durstock's backpack was found in the bathroom of the apartment, and the backpack contained a loaded handgun wrapped in a wet bandana and digital scales. When officers performed a pat down search of Durstock, they found a syringe in his pocket and arrested him. In a search incident to the arrest, the officers also located several additional items in Durstock's pockets,

including three bullets and a black bag that contained $331 in cash, rolling papers, and a plastic bag containing a white powder. The white powder was later identified as 6.06 grams of fentanyl. In a recorded jail telephone call in May 2017, Durstock admitted to a friend that he had been "hustling" with Thompson, which a detective testified was slang for dealing. Ex. 45. During Durstock's testimony, he admitted that the gun belonged to him.

[26] A review of Durstock's character reveals that twenty-three-year-old Durstock pleaded guilty to domestic battery, a Class A misdemeanor, in 2012. Durstock failed to appear at a review hearing on that charge, and a warrant was issued for his arrest.

[27] Durstock dropped out of high school in the tenth grade and has a six-year-old child. Durstock claims that he has never been ordered to pay child support. Durstock noted that he started using methamphetamine six years ago and was a daily user. He also advised that he used marijuana a couple times each week and previously used heroin on a daily basis. Durstock was unemployed at the time of his arrest.

[28] At sentencing, the trial court noted that Durstock's testimony and statements to the officers conflicted with other evidence and his own statements in the recorded jail telephone calls. The trial court found that Durstock's "dishonesty in these proceedings and with investigating officers" reflected "on his lack of remorse for his actions in this matter . . . ." Tr. Vol. II p. 128. The trial court

believed that Durstock "actually delivered the fentanyl to Ms. Thompson, which resulted in her overdose." *Id.*

[29] Given the significant amount of fentanyl that Durstock possessed, his possession of the handgun, his substance abuse, and the trial court's statements on Durstock's dishonesty and lack of remorse, we cannot say that the advisory sentence, which the trial court imposed here, was inappropriate.

# Conclusion

[30] The trial court properly admitted evidence of the fentanyl found in Durstock's pocket. The evidence is sufficient to sustain Durstock's conviction, and his sentence is not inappropriate. We affirm.

[31] Affirmed.

Bailey, J., and Altice, J., concur.