

FILED

Mar 18 2020, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John F. Crawford
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrece Tigner, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 18, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-1478 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Steven J. Rubick, Magistrate <br><br> Trial Court Cause No. <br> 49G20-1901-F2-3574 |

**May, Judge**

[1] Andrece Tigner appeals the trial court's order denying his motion to suppress. He raises two issues on appeal, but we find one to be dispositive and restate it as: whether the search of Tigner incident to his arrest was supported by probable cause as required by the Fourth Amendment to the United States Constitution. We reverse and remand.

# Facts and Procedural History[1]

In January 2019, Jill Jones, a Marion County Community Corrections law enforcement liaison, received an e-mail indicating that Isiah Williams, an individual on home detention, tampered with his monitoring device, tried to alter his drug screen, and used illegal narcotics. Jones and Officer Scott Nickels of the Indianapolis Metropolitan Police Department ("IMPD") conducted a home visit at Williams' address. Jones knocked numerous times on Williams' door and heard movement behind the door. Eventually, someone inside the residence asked who was at the door, and Jones indicated she was with community corrections. Williams opened the door, and Officer Nickels smelled the odor of marijuana coming from Williams' apartment.

Jones and Officer Nickels both entered the house. Jones could see another adult in the apartment's bedroom. She directed everyone to come into the living room. Williams' brother and Tigner walked out of the bedroom. Tigner did not live at the apartment and was visiting Williams at the time of the search. Tigner was holding Williams' young son as he left the apartment's bedroom. Jones went to the kitchen because she had heard movement in that area of the house after knocking on the door. Jones opened a cupboard and discovered a firearm.

---

[1] We heard oral argument in this case on January 28, 2020, at Ivy Tech Community College in Columbus. We commend counsel for their advocacy and thank Ivy Tech's faculty, staff, and students for their attendance.

[4] Officer Tiffany Wren entered the residence after Jones and Officer Nickels. She conducted a protective sweep and observed raw marijuana on the dining room table. After discovery of the gun and marijuana, officers obtained a search warrant for the apartment. In executing the warrant, officers discovered several hundred grams of marijuana in a duffel bag in a storage closet located off the apartment's patio. The officers also found pills that were not prescribed to Williams, scales, and "roaches."[2] (Tr. Vol. II at 15.)

[5] Officer Wren was told "two of the three were going." (*Id.* at 40.)[3] Officer Wren interpreted this to mean that Tigner and Williams were to be arrested and put in the police wagon. Accordingly, Officer Wren conducted a search incident to arrest of Tigner. In Tigner's pants pockets, she discovered over a thousand dollars in United States currency, pills, and two key fobs. Officer Nickels took one of the key fobs, went out onto the apartment building landing, and hit the lock button on the key fob, which activated the lights and horn of a minivan in the parking lot.

[6] Detective Gary Hadden arrived on the scene with a police dog. The animal sniffed the van and alerted, indicating the presence of drugs. Officer Wren applied for a search warrant to search the vehicle, and the court granted the

---

[2] "Roach" is a slang term for "the remains of a smoked marijuana cigarette." The Online Slang Dictionary. http://onlineslangdictionary.com/meaning-definition-of/roach **[https://perma.cc/99TZ-UFPJ].**

[3] Officer Wren testified she did not remember which officer told her Tigner was going in the police wagon. Officer Nickels testified he told Officer Wren that Tigner and Williams were being arrested.

warrant. Officers searched the vehicle and discovered marijuana, synthetic marijuana, crack cocaine, heroin, scales, and plastic sandwich bags.

[7] The State charged Tigner with Level 2 felony dealing in cocaine,[4] Level 3 felony possession of cocaine,[5] Level 2 felony dealing in a narcotic drug,[6] Level 4 felony possession of a narcotic drug,[7] Level 6 felony dealing in a synthetic drug or synthetic drug lookalike substance,[8] Class A misdemeanor possession of a synthetic drug or synthetic drug lookalike substance,[9] Level 6 felony possession of marijuana,[10] and Level 6 felony possession of a narcotic drug.[11] On May 22, 2019, Tigner filed a motion to suppress. The trial court held a hearing on Tigner's motion and denied the motion. Tigner moved to certify the order for interlocutory appeal, and the trial court granted his motion. We accepted jurisdiction on July 26, 2019.

# Discussion and Decision

---

[4] Ind. Code § 35-48-4-1.

[5] Ind. Code § 35-48-4-6.

[6] Ind. Code § 35-48-4-1.

[7] Ind. Code § 35-48-4-6.

[8] Ind. Code § 35-48-4-10.5.

[9] Ind. Code § 35-48-4-11.5.

[10] Ind. Code § 35-48-4-11.

[11] Ind. Code § 35-48-4-6.

[8]     Our standard for reviewing the denial of a motion to suppress is like the standard we employ in other sufficiency determinations. *Johnson v. State*, 21 N.E.3d 841, 843 (Ind. Ct. App. 2014), *trans. denied*.

> We determine whether substantial evidence of probative value exists to support the court's denial of the motion. We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. However, unlike other sufficiency matters, we must also consider the uncontested evidence that is favorable to the defendant.

*Id*. (internal citations omitted). Nonetheless, when the denial of a motion to suppress concerns the constitutionality of a search or seizure, that conclusion is a pure question of law that we review *de novo*. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014).

### A. Fourth Amendment to United States Constitution

[9]     The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Amendment protects citizens from search or seizure absent a warrant supported by probable cause. *Durstock v. State*, 113 N.E.3d 1272, 1276-77 (Ind. Ct. App. 2018), *trans. denied*. However, there are several exceptions to the warrant requirement. *Id*. at 1277. The State bears the burden of proving that

an exception to the warrant requirement applies for evidence obtained during a warrantless search to be admissible at trial. *Id.*

[10] "One exception to the warrant requirement is the search incident to arrest, which permits 'a search of the arrestee's person and the area within his or her control.'" *Id.* at 1278 (quoting *Clark v. State*, 994 N.E.2d 252, 261 n.10 (Ind. 2013)). The area within the arrestee's control signifies the area from which the arrestee might gain possession of a weapon or destroy evidence. *Stark v. State*, 960 N.E.2d 887, 889 (Ind. Ct. App. 2012), *trans. denied*. An officer may conduct a search incident to arrest if the officer has probable cause to make an arrest. *Curry v. State*, 90 N.E.3d 677, 687 (Ind. Ct. App. 2017), *trans. denied*.

[11] "Probable cause for an arrest exists if at the time of the arrest the officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect has committed the criminal act in question." *K.K. v. State*, 40 N.E.3d 488, 491 (Ind. Ct. App. 2015). Probable cause exists "when the totality of the circumstances establishes 'a fair probability'—not proof or a *prima facie* showing—of criminal activity, contraband, or evidence of a crime." *Hodges v. State*, 125 N.E.3d 578, 582 (Ind. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (emphasis added). We review the determination of probable cause *de novo*, and an officer's subjective belief regarding whether probable cause existed has no legal effect. *K.K.*, 40 N.E.3d at 687.

[12] At the suppression hearing, Officer Nickels testified that at the time Officer Wren conducted her search, Tigner was being arrested for visiting a common nuisance. A person commits the crime of visiting a common nuisance by "knowingly or intentionally" visiting a "building, structure, vehicle, or other place" used for the use, manufacture, or sale of illegal drugs. Ind. Code § 35-45-1-5. Tigner argues the police did not have probable cause to arrest him for visiting a common nuisance at that time because there was no evidence Williams' apartment was a place where "continuous or recurrent prohibited activity [took] place." *Leatherman v. State*, 101 N.E.3d 879, 884 (Ind. Ct. App. 2018).[12]

[13] The State argues evidence of the apartment being a place of repeated drug use can be inferred from the facts that the apartment belonged to Williams and that community corrections arrived at Williams' apartment based on information that Williams was using drugs. However, the plain language of the common nuisance statute requires that the visitor know the apartment was being used for the consumption, manufacture, or sale of illegal drugs. A visitor may not know the person he is visiting is subject to community corrections or that law enforcement suspects the person has recently used drugs.

---

[12] A prior version of the common nuisance statute required that a building be used for a prohibited activity only once for it to be considered a common nuisance, but the General Assembly amended the statue in 2016 out of "a conscious desire on the part of our Legislature that the common nuisance statute *not* be applied to isolated instances of prohibited activity." *Leatherman*, 101 N.E.3d at 884 (emphasis in original).

[14] Further, the State contends Tigner's presence as a visitor in Williams' apartment, combined with the evidence discovered during the search of the apartment, shows a fair probability Tigner knew the apartment was regularly used for the consumption or sale of illegal drugs. However, the duffel bag containing hundreds of grams of marijuana was found inside a closet that a visitor would not be able to readily observe. The smell of burnt marijuana and a small amount of marijuana in plain view would denote to a visitor an isolated instance of drug use, but it does not show the apartment was being used on a continuous basis for the distribution or consumption of marijuana. Thus, the officers lacked probable cause to arrest Tigner for visiting a common nuisance at the time Officer Wren conducted her search incident to arrest. *See Leatherman*, 101 N.E.3d at 884 (holding there was insufficient evidence to support conviction for maintaining a common nuisance when the State failed to prove the defendant's vehicle was used on more than one occasion for the sale of an illegal substance).

[15] The State also argues there was probable cause to arrest Tigner for possession of marijuana. It is illegal for a person to knowingly or intentionally possess marijuana. Ind. Code § 35-48-4-11. In order to commit the offense of possession of marijuana, the arrestee must have either actual possession or constructive possession of marijuana. *Matter of J.L.*, 599 N.E.2d 208, 212 (Ind. Ct. App. 1992), *trans. denied*.

[16] Constructive possession requires the individual have both the intent and the capability to maintain dominion and control over the illegal substance. *Id*. A

person's "mere presence where drugs are located or his association with persons who possess drugs is not alone sufficient to support a finding of constructive possession." *Id.* The intent to maintain dominion and control over an illegal substance can be inferred from "proof of a possessory interest in the premises on which illegal drugs are found" because "the law infers that the party in possession of the premises is capable of exercising dominion and control over all items on the premises." *Gee v. State*, 810 N.E.2d 338, 340-41 (Ind. 2004).

> However, the law takes a different view when applying the intent prong of constructive possession. When a defendant's possession of the premises on which drugs are found is not exclusive, then the inference of intent to maintain dominion and control over the drugs 'must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence.' *Lampkins,* 682 N.E.2d at 1275. The 'additional circumstances' have been shown by various means: (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant. *Henderson v. State,* 715 N.E.2d 833, 836 (Ind. 1999).

*Id*. at 341.

[17] Here, Tigner did not have an exclusive possessory interest in the apartment. He did not live there. *See Gregory v. State*, 885 N.E.2d 697, 704 (Ind. Ct. App. 2009) (holding visitor to property had no interest in the property searched and therefore could not challenge the constitutionality of the search), *trans. denied*. He was visiting Williams' apartment at the time of the community corrections

visit. The State argues Tigner was close enough to the marijuana found in plain view that his capability to maintain dominion and control over the contraband may be inferred. However, at the time of the search incident to arrest, officers knew Tigner was in an apartment where marijuana had been consumed, but marijuana was not found in the bedroom where Tigner was located when officers entered the apartment. Thus, Tigner did not constructively possess the marijuana found in plain view because he was not in proximity to it, there is no evidence Williams' apartment was used for the manufacture of drugs, Tigner did not make any incriminating statements, nor were items he owned intermingled with contraband. Therefore, officers lacked probable cause to arrest Tigner for possession of marijuana at the time Officer Wren conducted the search incident to arrest. *See Hardister v. State*, 849 N.E.2d 563, 574 (Ind. 2006) (holding visitor did not constructively possess firearms when the visitor was arrested in house's attic and guns were found in the house's basement and living room). Officer Wren's search of Tigner incident to Tigner's arrest violated Tigner's Fourth Amendment rights against unlawful search and seizure.[13]

# Conclusion

---

[13] Since the key fob was found in the search incident to an illegal arrest, the drugs found as a result of the key fob being used should also be suppressed as fruit of the poisonous tree. *See Esquerdo v. State*, 640 N.E.2d 1023, 1030 (Ind. 1994) (holding evidence gathered during illegal warrantless entry into home as well as evidence gathered pursuant to later issued search warrant was inadmissible).

The search of Tigner incident to arrest was unconstitutional because the officers lacked probable cause to arrest Tigner for a crime as required by the Fourth Amendment. Therefore, we reverse the trial court's denial of Tigner's motion to suppress and remand for further proceedings consistent with this opinion.

Reversed and remanded.

Baker, J., and Bailey, J., concur.