## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 29 2019, 10:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Wayne Lawson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 29, 2019

Court of Appeals Case No.
19A-CR-740

Appeal from the Pike Circuit Court

The Honorable Jeffrey L. Biesterveld, Judge

Trial Court Cause No.
63C01-1805-F4-338

**Bailey, Judge.**

# Case Summary

David Wayne Lawson ("Lawson") appeals his convictions, following a jury trial, for Count I, dealing in methamphetamine, as a Level 4 felony;[1] Count II, dealing in methamphetamine, as a Level 5 felony;[2] and Count III, maintaining a common nuisance, as a Level 6 felony.[3]

We affirm in part, reverse in part, and remand.

# Issues

Lawson raises three issues on appeal, which we consolidate and restate as follows:

1.  Whether the trial court abused its discretion when it admitted into evidence transcripts of text messages taken from the cellular telephone of an alleged co-conspirator.

2.  Whether the State presented sufficient evidence to support his convictions for dealing in methamphetamine and maintaining a common nuisance.

# Facts and Procedural History

---

[1] Ind. Code § 35-48-4-1.1(a)(1), (c).

[2] I.C. § 35-48-4-1.1(a)(1).

[3] I.C. § 35-45-1-5(c).

[4]     During the early morning hours of May 6, 2018, Lawson was driving through Petersburg, Indiana. Jennifer Kostas ("Kostas") was a passenger in the vehicle Lawson drove. Corporal Jared Simmons ("Officer Simmons") of the Petersburg Police Department pulled Lawson's vehicle over because his vehicle was missing a functioning license plate light. Upon approaching Lawson's vehicle on the driver's side and asking Lawson for his registration and identification, Officer Simmons noticed that Lawson exhibited high levels of nervousness. After Lawson exited the vehicle as instructed, Officer Simmons smelled raw marijuana coming from Lawson's person. Lawson consented to Officer Simmons searching him, and, in doing so, Officer Simmons found what he recognized as a methamphetamine pipe that contained fresh methamphetamine residue, a marijuana pipe, and a cellophane wrapper containing marijuana.

[5]     Officer Simmons then handcuffed Lawson and read him the *Miranda* warnings. Officer Simmons asked Lawson if there was anything illegal in the vehicle, and Lawson responded that there was another methamphetamine pipe in between the driver's seat and the center console. Officer Simmons then had Kostas also exit the vehicle, and he handcuffed her and read her the *Miranda* warnings. Officer Simmons retrieved the second methamphetamine pipe from the vehicle and searched the rest of the vehicle. During his search, Officer Simmons found under the passenger seat a zipped plastic pouch that contained a butane lighter

and another methamphetamine pipe. Officer Simmons then searched Kostas's purse and discovered a corner baggie that contained methamphetamine residue.

[6] The State charged Lawson with two counts of dealing in methamphetamine, one as a Level 4 felony and the other as a Level 5 felony, and one count of maintaining a common nuisance, as a Level 6 felony. The State later amended the charges to include a habitual offender allegation[4] and one count of conspiracy to deal in methamphetamine in amount of at least one gram, as a Level 4 felony.[5]

[7] Officer Simmons testified at Lawson's December 3, 2018, jury trial as to what Lawson said to Officer Simmons at the time of Lawson's arrest, following the reading of the *Miranda* warnings. Officer Simmons testified that, in response to his questions, Lawson stated that he and Kostas had been visiting friends in the nearby Autumn Lane Apartments. Officer Simmons asked Lawson if he and Kostas had "brought meth up here to sell it," and Lawson said he did not and then turned to look at Kostas. Tr. at 89. Officer Simmons asked Lawson if Kostas had sold methamphetamine and Lawson responded that he "believe[d] so." *Id*. Lawson told Officer Simmons that Kostas had sold methamphetamine to a person in the Autumn Lane Apartments who Lawson did not know.

---

[4] I.C. § 35-50-2-8.

[5] I.C. § 35-48-4-1.1(a)(1), (c); I.C. § 35-41-5-2.

Lawson described the buyer as a "taller guy" with "dark hair," and he stated that Kostas had met up with the buyer at the window to an apartment, where a pink light was shining. *Id*. at 90. Lawson stated to Officer Simmons that Lawson knew Kostas "was selling meth and that was the reason for [their] visit" to the apartment. *Id*. at 91. Lawson also stated to Officer Simmons that Lawson had "been there" a "couple of times before." *Id*. Lawson told Officer Simmons that Lawson and Kostas had "come up here to sell drugs before to the same person" at the same apartments. *Id*. at 91-92.

[8] Officer Simmons also testified that he had "seize[d] a phone from Ms. Kostas" at the time of the arrest and had "occasion to search that phone for any evidence of drug dealing." *Id*. at 95-96. He identified State's Exhibit 8 as seven pages depicting "messages between Ms. Kostas and a Chris subject." *Id*. at 96. Officer Simmons testified that those messages were "taken off of [Kostas's] phone," *id*., from Facebook messenger, *id*. at 136, and that there was a picture of the "Chris subject" "associated with all of his messages," on Kostas's phone, *id*. at 97. When Officer Simmons clicked on the picture of the Chris subject on Kostas's phone, the profile of Chris Grier ("Grier') appeared. Officer Simmons recognized the person in the picture as Grier, who Officer Simmons knew at the time of the traffic stop. Officer Simmons further testified that he knew Grier was living in the same Autumn Lane Apartments that Lawson had described. Officer Simmons testified that the text messages in Exhibit 8 "indicate that [Kostas] wants money from Grier in exchange for something she's going to go

get," and "indicate[], from Mr. Grier, that he wants a gram in exchange for a buck." *Id*. at 100. State's Exhibit 8 was then admitted into evidence over Lawson's objections.

[9] Officer Simmons further testified that "based on [his] training as an officer," he believed the part of the messages in Exhibit 8 referring to two hundred dollars meant that Grier wanted two hundred dollars' worth of "something." *Id*. at 109. He testified that jail staff found $180 on Kostas's person after she was arrested, and Lawson had about $21 on his person. *Id*. at 109, 140-41. Officer Simmons testified that the part of the messages stating "you got another g" was Grier asking Kostas whether she had another "gram of meth," *id*. at 110, and that the message from Grier stating "got a buck" meant got "one hundred dollars," *id*. at 110-11. Officer Simmons testified that the "street price" for one gram of methamphetamine is one hundred dollars. *Id*. at 112.

[10] On cross examination, Officer Simmons testified that the "only proof that [he was] able to recover regarding the amount of methamphetamine that Ms. Kostas allegedly took to the apartment to Mr. Grier was from her test (sic) - from her statement to [Officer Simmons.]" *Id*. at 119. The "statement" to which this question refers was from the State's prior deposition of Kostas. *Id*. Lawson further asked Officer Simmons whether Kostas had told Officer Simmons what amount of money "she received from Mr. Grier," and Officer Simmons stated, "she [Kostas] told us it was about a hundred dollars." *Id*. at 127. Kostas told Officer Simmons "she already had eighty dollars on her at that

time." *Id*. Officer Simmons testified that he had interviewed Kostas, and that Kostas told him she "didn't know the exact amount" of meth she sold to Grier. *Id*. at 129. He stated that he could not say "with any reasonable certainty how much methamphetamine was actually sold that day," but that Kostas told him Grier paid her $100 for "a gram." *Id*. at 137, 139. Officer Simmons testified that, based "solely" on "the statement from Ms. Kostas," he believed the drug deal was for "at least one gram" of methamphetamine. *Id*. at 137-38.

[11] Lawson was convicted of two counts of dealing in methamphetamine, one count of conspiracy to deal in methamphetamine, and one count of maintaining a common nuisance. Lawson admitted to being a Habitual Offender. The trial court sentenced Lawson to twelve years for Count I, dealing in methamphetamine, as a Level 4 felony, and two and a half years for Count III, maintaining a common nuisance, as a Level 6 felony. It ordered that Counts I and III run concurrently. Count I was enhanced by twelve years as a habitual offender enhancement. The convictions for Count II, dealing in methamphetamine as a Level 5 felony, and Count IV, conspiracy to deal in methamphetamine as a Level 4 felony, were merged into Count I. This appeal ensued.

# Discussion and Decision

# Admission of Out-of-Court Statements of Alleged Co-Conspirators

Lawson challenges the trial court's ruling admitting State's Exhibit 8 into evidence, over his objections. We review the admission or exclusion of evidence for an abuse of discretion, and we will reverse the trial court's decision only when its action is clearly against the logic and effect of the facts and circumstances before it. *E.g.*, *Speybroeck v. State*, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007).

Lawson first attacks the admissibility of Exhibit 8 on the grounds that it is hearsay, since it allegedly contains statements of Kostas and Grier, neither of whom appeared at trial. And Lawson maintains that the State failed to establish that Exhibit 8 was a statement of a co-conspirator—and therefore not hearsay under Rule of Evidence 801(d)(2)(E)—because the State did not provide proof of the conspiracy independent of the Exhibit 8 statements themselves. Rule 801(d)(2)(E) provides: "A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." In order to introduce such a statement into evidence, the State must lay an evidentiary foundation establishing by independent proof the existence of the conspiracy. *Hightower v. State*, 866 N.E.2d 356, 365 (Ind. Ct. App. 2007) (noting the independent proof may be circumstantial and "need not be strong"), *trans. denied*. Here, the State introduced independent proof that Lawson conspired

with Kostas to sell methamphetamine.  Prior to the admission of Exhibit 8, Officer Simmons testified that Lawson admitted to Officer Simmons that Lawson knew Kostas intended to sell methamphetamine that night and that Lawson drove Kostas to the Autumn Lane Apartments for that purpose.

[14] However, even assuming the messages were not hearsay and were admissible under Rule of Evidence 801(d)(2)(E), Lawson argues that the court erred in admitting Exhibit 8 because the State failed to authenticate the document as required by Rule of Evidence 901.  Rule 901 requires that the proponent of the item "produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Although "[a]bsolute proof" of authenticity is not required, the proponent must at least establish a "reasonable probability that the evidence is what it is claimed to be and may use direct or circumstantial evidence to do so."  *M.T.V. v. State*, 66 N.E.3d 960, 963 (Ind. Ct. App. 2016), *trans. denied*.  We have previously held that the authentication requirement applies to the substantive content of text messages generated and stored in cellular telephones.  *Hape v. State*, 903 N.E.2d 977, 990 (Ind. Ct. App. 2009), *trans. denied*.

[15] Here, the State failed to authenticate Exhibit 8.  Officer Simmons testified that State's Exhibit 8 was seven pages depicting "messages between [Kostas] and [Grier]."  Tr. at 96.  He testified that the messages "were taken off of [Kostas's] phone" which he had seized upon arresting her but which was not, itself, offered or admitted into evidence.  *Id*. at 96-97.  He further testified that there

was a picture of Grier next to each message from Grier and that he recognized Grier. Officer Simmons testified that the messages showed that "a drug deal [was] in the process." *Id.* at 98. However, neither Officer Simmons nor any other witness testified as to how the documents in Exhibit 8 were created and by whom or, most importantly, *on what dates the messages had been created and/or sent and received*. And none of that information is discernable from the face of the exhibit itself. Ex. at 10-16. Thus, the State failed to authenticate Exhibit 8 by showing a reasonable probability that the messages in it were—as alleged—related to the drug deal that took place on May 6, 2018.

[16] However, we hold that the admission of Exhibit 8 without proper authentication was harmless error. Before a defendant is entitled to a reversal, he must affirmatively show that the error of which he complains prejudiced his substantial rights. *E.g.*, *Vaughn v. State*, 13 N.E.3d 873, 886 (Ind. Ct. App. 2014), *trans. denied*.

> In evaluating whether erroneously admitted evidence was prejudicial, we assess its "probable impact ... upon the jury in light of all of the other evidence that was properly presented. If we are satisfied the conviction is supported by independent evidence of guilt[,] ... the error is harmless." [*Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014)]. Put another way, "we judge whether the jury's verdict was substantially swayed. If the error had substantial influence, or if one is left in grave doubt, the conviction cannot stand[.]" *Lafayette v. State*, 917 N.E.2d 660, 666–67 (Ind. 2009) (citation omitted).

*Williams v. State*, 43 N.E.3d 578, 583 (Ind. 2015).

Here, there is not a substantial possibility that the messages in Exhibit 8 prejudiced the jury's verdicts. As we discuss in more detail below, there was sufficient and compelling independent evidence establishing Lawson's guilt of dealing in methamphetamine. And it is highly unlikely that Exhibit 8 had any impact on the jury's verdict convicting Lawson of maintaining a common nuisance (i.e., his vehicle) because the messages: did not refer to Lawson at all, referred to only one drug deal, and did not indicate that any vehicle—much less Lawson's particular vehicle—was or would be used in any drug deal. The admission of Exhibit 8 was harmless error.[6]

## Sufficiency of Evidence

### *Standard of Review*

Lawson challenges the sufficiency of the evidence to support his convictions. Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the

---

[6] Lawson alleges in one sentence of his brief that the admission of Exhibit 8 "violated, among other things, the Sixth Amendment's Confrontation Clause." Appellant's Br. At 9. Lawson has waived this argument because he did not raise it in the trial court, *see, e.g.*, *Plank v. Cmty. Hosp. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013), or provide cogent reasoning in support of it on appeal, Ind. Appellate Rule 46(A)(8).

judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*.

*Dealing in methamphetamine*

[19] To prove Lawson committed dealing in methamphetamine, as a Level 4 felony, the State was required to prove beyond a reasonable doubt that (1) Lawson, *as an accomplice* or principal, (2) knowingly or intentionally (3) delivered (4) methamphetamine (5) in the amount of at least one gram but less than five grams. I.C. § 35-41-2-4; I.C. § 35-48-4-1.1(a)(1)(A), (c)(1). There was no evidence produced at trial that Lawson himself sold methamphetamine to Grier. Rather, Lawson was charged as an accomplice[7] to Kostas. Indiana Code Section 35-41-2-4 provides: "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person: (1) has not been prosecuted for the offense; (2) has not been convicted of the offense; or (3) has been acquitted of the offense."

---

[7] The charging information cited the dealing statute, but not the accomplice liability statute. App. Vol. II at 111. However, "no reference to the accomplice liability statute need be included in the charging information in order for a defendant to be convicted of [the underlying] crime." *Wise v. State*, 719 N.E.2d 1192, 1199 (Ind. 1999); *see also Schaaf v. State*, 54 N.E.3d 1041, 1043 (Ind. Ct. App. 2016) ("[A] person can be charged as a principal and convicted as an accomplice.").

This statute does not establish liability as a separate crime, but merely as a separate basis of liability for the crime charged. *E.g.*, *Taylor v. State*, 840 N.E.2d 324, 333 (Ind. 2006).

[20] In determining whether there is sufficient evidence to support an accomplice relationship, we consider: (1) presence at the scene of the crime;[8] (2) companionship with another at the scene of the crime; (3) failure to oppose commission of the crime; and (4) course of conduct before, during, and after occurrence of the crime. *E.g.*, *Bethel v. State*, 110 N.E.3d 444, 450 (Ind. Ct. App. 2018), *trans. denied*. It is not necessary that the evidence show the alleged accomplice personally participated in the commission of each element of the offense. *Castillo v. State*, 974 N.E.2d 458, 466 (Ind. 2012). Rather, "[a] jury may infer complicity and participation in a crime 'from defendant's failure to oppose the crime, companionship with the one engaged therein, and a course of conduct before, during, and after the offense which tends to show complicity.'" *Hauk v. State*, 729 N.E.2d 994, 998 (Ind. 2000) (quoting *Shane v. State*, 716 N.E.2d 391, 396 (Ind. 1999)); *see also Vasquez v. State*, 762 N.E.2d 92, 95 (Ind. 2001) ("An accomplice can be held criminally liable for everything done by his confederates which was a probable and natural consequence of their common plan." (quotation and citation omitted)). Thus, in *Wood v. State*, for example,

---

[8] "Mere presence at the scene of a crime is insufficient to make one an accomplice," but we consider presence at the scene in conjunction with the other factors. *Griffin v. State*, 16 N.E.3d 997, 1004 (Ind. Ct. App. 2014).

there was sufficient evidence to support the defendant's conviction for robbery, as an accomplice, where the defendant: admitted she knew the principal intended to rob someone; drove the principal to the scene of the crime; parked the vehicle and waited for the principal while the principal committed the crime; and then drove away with the principal until stopped by police. 963 N.E.2d 632, 636 (Ind. Ct. App. 2012).

[21] Here, the State presented sufficient evidence that Lawson knowingly aided Kostas in delivering one gram of methamphetamine. Lawson admitted he knew Kostas intended to sell methamphetamine to Grier; Lawson admitted that he drove Kostas to the scene of the crime, i.e., Autumn Lane Apartments, for the purpose of her selling methamphetamine to Grier; Lawson waited for Kostas while she conducted the drug sale; and Lawson drove Kostas away from the scene of the crime until stopped by police. In addition, Officer Simmons testified that one gram of methamphetamine sells for $100 and that Kostas told him[9] that Grier paid her $100 for the gram of methamphetamine she sold him. From those facts, the jury could reasonably infer that Kostas sold Grier one gram of methamphetamine and Lawson knowingly aided her in doing so. There was sufficient evidence to support Lawson's conviction for dealing in methamphetamine, as a Level 4 felony.

---

[9] Lawson did not object to Officer Simmons's testimony about what Kostas told him; in fact, Lawson's own attorney elicited testimony about Kostas's out of court statements to Officer Simmons.

[22] The trial court entered a judgment of conviction on all four counts against Lawson, but it merged the dealing in methamphetamine as a Level 5 felony (Count II) and the conspiracy to deal in methamphetamine (Count IV) with the conviction for dealing in methamphetamine as a Level 4 felony (Count I). App. Vol. III at 49 (Abstract of Judgment). Presumably, the trial court did so due to double jeopardy concerns.[10] However, a double jeopardy violation "cannot be remedied by the practical effect of concurrent sentences or by merger after conviction has been entered."[11] *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008) (quotations and citation omitted), *trans. denied*. Therefore, we remand this cause to the trial court with an order to vacate the entries of judgment of convictions for dealing in methamphetamine as a Level 5 felony and conspiracy to deal in methamphetamine.

*Maintaining a Common Nuisance*

---

[10] "Double jeopardy rules preclude a conviction for conspiracy and the underlying offense only when the same evidence is used to prove both the overt act committed in furtherance of the conspiracy and the commission of the underlying crime." *Coleman v. State*, 952 N.E.2d 377, 382 (Ind. Ct. App. 2011) (citing *Johnson v. State*, 749 N.E.2d 1103, 1108 (Ind. 2001)). In this case, the evidence that proved Lawson was guilty of dealing a gram of methamphetamine as a Level 4 felony as an accomplice to Kostas is the same evidence that would be used to show (1) Lawson dealt methamphetamine as a Level 5 felony (i.e., dealt less than one gram) as an accomplice to Kostas, and (2) the overt act in furtherance of a conspiracy. That evidence is Lawson's admission that he knew Kostas intended to sell methamphetamine and drove Kostas to Grier's apartment on May 6, 2018, for that purpose.

[11] Although Lawson does not raise the double jeopardy issue on appeal, we raise it *sua sponte* as "questions of double jeopardy implicate fundamental rights." *Whitham v. State*, 49 N.E.3d 162, 168 (Ind. Ct. App. 2015), *trans. denied*.

[23] To prove Lawson committed maintaining a common nuisance as a Level 6 felony, the State was required to prove beyond a reasonable doubt that Lawson: (1) knowingly or intentionally (2) maintained (3) a vehicle (4) to unlawfully sell or deliver a controlled substance. I.C. § 35-45-1-5(a)(3), (c). The State presented evidence that Lawson knowingly used his vehicle to drive Kostas to Grier's apartment so that Kostas could sell Grier methamphetamine. However, Lawson contends the State failed to meet its burden of proof because it provided no evidence that he used his vehicle more than one time to assist Kostas in dealing in methamphetamine. We agree.

[24] As we explained in *Leatherman v. State*, 101 N.E.3d 879, 883 (Ind. Ct. App. 2018), *as corrected*, "to prove the nuisance was a 'common' nuisance, the State must provide evidence that the vehicle was used on more than one occasion for the unlawful delivery of a controlled substance." We reached this conclusion based on the legislative and common law history of the crime of maintaining a common nuisance. *Id*. at 884. Here, although the State provided evidence that Lawson admitted that he and Kostas had come to the same apartment complex on prior occasions to sell methamphetamine to the same person, there was no evidence that Lawson used any vehicle—much less the specific vehicle he drove on May 6, 2018—to do so.[12] Therefore, the State failed to provide sufficient

---

[12] Thus, the State is incorrect when it contends Lawson "admitted to driving there on prior occasions." Appellee Br. at 15. *See* Tr. at 91.

evidence to support Lawson's conviction for maintaining a common nuisance, and we must reverse that conviction. *Id.*

# Conclusion

Although the State failed to properly authenticate Exhibit 8, which it alleged contained copies of text messages between Kostas and Grier related to the May 6, 2018, drug deal, the admission of that exhibit was harmless error; the exhibit was irrelevant to—and therefore not relied upon to support—the common nuisance conviction, and there was sufficient evidence aside from the exhibit to support Lawson's dealing conviction. Furthermore, there was sufficient evidence to support Lawson's conviction, under the accomplice liability statute, of dealing in methamphetamine as a Level 4 felony. However, the trial court failed to remedy any double jeopardy concerns by merging Counts II (dealing in methamphetamine as a Level 5 felony) and IV (conspiracy to deal) as opposed to vacating those convictions. And there was insufficient evidence to support Lawson's conviction for maintaining a common nuisance, Count III.

We affirm in part, reverse in part, and remand with instructions to vacate the convictions in Counts II, III, and IV.

Najam, J., and May, J., concur.